# Emergency Authority of the Secretary of Health and Human Services Under 42 U.S.C. § 243(c)(2)

Under § 311 of the Public Health Service Act, 42 U.S.C. § 243(c)(2), which authorizes the Secretary of Health and Human Services, at the request of the appropriate state or local authority, to extend temporary assistance to states and localities in meeting health emergencies, the Public Health Service may provide relocation assistance to residents living near the Love Canal for a period not to exceed 45 days, for purposes of assessing and dealing with the health emergency in that area.

May 17, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT TO THE PRESIDENT FOR INTERGOVERNMENTAL AFFAIRS

This responds to your request for our opinion whether the Secretary of Health and Human Services is authorized by 42 U.S.C. § 243(c)(2) to assist state and local authorities in temporarily relocating certain residents who now live near the Love Canal in Niagara Falls, New York, to cities removed from health hazards of the Canal.* In our opinion, this section does give the Secretary that authority.

The section in question was enacted in 1967 as an addition to § 311 of the Public Health Service Act. Partnership for Health Amendments of 1967, Pub. L. No. 90–174, § 4, 81 Stat. 533, 536 (1967). As enacted, the statute provided:

> The Secretary may enter into agreements providing for cooperative planning between Public Health Service medical facilities and community health facilities to cope with health problems resulting from disasters and for participation by Public Health Service medical facilities in carrying out such planning. *He may also, at the request of the appropriate State or local authority, extend temporary (not in excess of forty-five days) assistance to States or localities in*

---

*NOTE: Love Canal, an uncompleted excavation originally designed to link the Niagara River and Lake Ontario, was used as a chemical dumpsite between 1920 and 1953. During the 1970's, homes bordering the landfill began to smell of chemicals, and residents of the area were found to be suffering unusually high rates of cancer, birth defects, and other illnesses. In 1978, an investigation by the New York State Departments of Health and Environmental Conservation led to the discovery that the landfill was leaking dangerous chemical compounds, and the area was declared by the State to be "an extremely serious threat to health and welfare." On May 21, 1980, President Carter signed an emergency order authorizing federal assistance in the temporary relocation of the 710 families who had remained in the area. Ed.

> meeting *health emergencies of such a nature as to warrant Federal assistance.* The Secretary may require such reimbursement of the United States for aid (other than planning) under the preceding sentences of this subsection as he may determine to be reasonable under the circumstances. Any reimbursement so paid shall be credited to the applicable appropriation of the Public Health Service for the year in which such reimbursement is received.

*Id.* (Emphasis added). In 1976, the section was amended to authorize the Secretary to develop and implement a plan to use resources of the Public Health Service and other agencies under the Secretary's jurisdiction to control epidemics and to meet other health emergencies. National Consumer Health Information and Health Promotion Act of 1976, Pub. L. No. 94–317, § 202(b), 90 Stat. 695, 703 (1976). The 1976 amendment divided § 243(c) into two parts. Section 243(c)(1) authorized the development and implementation of plans to meet emergencies or problems resulting from disasters or epidemics. Section 243(c)(2), which sets forth the Secretary's authority to extend assistance to states or localities in meeting health emergencies, is the section which grants the authority about which you have inquired. This section now provides:

> The Secretary may, at the request of the appropriate State or local authority, extend temporary (not in excess of forty-five days) assistance to States or localities in meeting health emergencies of such a nature as to warrant Federal assistance. The Secretary may require such reimbursement of the United States for assistance provided under this paragraph as he may determine to be reasonable under the circumstances. Any reimbursement so paid shall be credited to the applicable appropriation for the Service for the year in which such reimbursement is received.

*Id.* The 1976 amendment did not substantively change the Secretary's authority respecting temporary health emergency assistance to states or localities.

To determine the scope of the Secretary's authority under this section, we have reviewed the legislative history of both the 1967 and the 1976 Acts. This review yielded little guidance as to the meaning of the operative phrases in the statute, such as the 45-day limitation on assistance. There is also little indication of the legislative intent as to what may satisfy the requirement of a request from "the appropriate State or local authority" or as to what type of health emergency was contemplated. We found nothing in this review to indicate that the Secretary

639

may not extend federal assistance for relocating Love Canal residents to temporary housing.[1]

The 1967 amendment, which added the section authorizing the Secretary to act in health emergencies, was part of a lengthy bill which modified the Public Health Service Act. The House Committee on Interstate and Foreign Commerce explained the new section as follows:

> This section adds a new subsection (c) to section 311 of the Public Health Service Act. Under this proposed new subsection, the Secretary would be authorized to enter into agreements providing for cooperative planning between public health medical facilities and community health facilities to cope with health problems resulting from disasters, and for participation by Public Health Service medical facilities in carrying out such planning. *He could also, at the request of appropriate State or local authority, extend temporary (not in excess of 45 days) assistance to States or localities in meeting health emergencies of such a nature as to warrant Federal assistance.* He could also require such reimbursement of the United States for aid (other than planning) received under this subsection as he determines to be reasonable under the circumstances. Any such reimbursement would be credited to the applicable appropriation of the Public Health Service.[2]

H.R. Rep. No. 538, 90th Cong., 1st Sess. 38 (1967) (emphasis added). The reference to the new section in the Senate report indicates that the Congress intended the section to grant broad authority to the Secretary so that the Public Health Service could play an active role in delivering disaster assistance services. In explaining this expanded role, the committee wrote:

> Under present statutory authority, the Public Health Service may provide emergency care and treatment in its hospitals and outpatient facilities to persons who are not legal beneficiaries of the Service, but the Service does not have clear authority to provide such emergency care or treatment outside of its own facilities. If Public Health Service hospitals are to be responsible members of the medical communities in which they are located, they must be able to play a more active role in meeting such community emergency health needs as arise in the case of floods, fires, and other disasters. The proposed new au-

---

[1] There are no judicial decisions or regulations interpreting this section.

[2] The Secretary must determine whether to require reimbursement from the state or locality. In 1967, it was suggested to the committee that the reimbursement be mandatory, but this suggestion was not followed. *See* H.R. Rep. No. 538, 90th Cong., 1st Sess. 49 (1967).

thority would not create any direct Federal obligation to provide such emergency assistance, but it would authorize Public Health Service medical facilities to cooperate with other community agencies in the development and execution of disaster assistance services.

S. Rep. No. 724, 90th Cong., 1st Sess. 13 (1967). Although this reference could be read to suggest that the section authorizes only emergency assistance in the form of assistance by Public Health Service facilities, we do not believe the section properly should be construed so narrowly. In its section-by-section analysis, the committee noted that § 4 authorized agreements for cooperative planning between public health medical facilities and community health facilities *and* that the Secretary could also extend temporary assistance to meet health emergencies. There is no limitation on the type of temporary assistance that may be provided. *See* S. Rep. No. 724, 90th Cong., 1st Sess. 25 (1967).[3]

Most of the discussion on the floor focused on other, more controversial sections of the bill. The few comments on § 4 simply refer to the strengthened role of the Public Health Service in assisting states and localities to cope with health emergencies and disasters. *See, e.g.,* 113 Cong. Rec. 26,016 (1967) (Statement of Mr. Donohue). Hearings on the bill were held by the Senate Committee on Labor and Public Welfare. As with the floor debates, the few comments on § 4 at the hearings summarily referred to the section as a clarification and strengthening of existing authority for assistance to states and localities. *See, e.g., Partnership For Health Amendments of 1967: Hearings on S. 1131 and H.R. 6418 Before the Subcomm. on Health of the Sen. Comm. on Labor and Public Welfare,* 90th Cong., 1st Sess. 62 (1967).

The 1976 amendment, as stated earlier, did not substantively modify the Secretary's authority to assist during emergencies. The amendment to § 4 appeared in the House bill. The committee simply paraphrased the existing provision in its report, without shedding any light on the meaning of the section. H.R. Rep. No. 1007, 94th Cong., 2d Sess. 30 (1976).

The plain language of the statute authorizes the Secretary to provide the assistance at the request of the appropriate state or local authority. This request is a prerequisite to the provision of any assistance. The Secretary must determine whether the authority requesting the aid is the appropriate authority.[4] The Secretary must determine whether the circumstance is a health emergency of such a nature as to warrant

[3] A conference committee was convened to resolve differences on other portions of the bill. The conference report does not discuss this section. H.R. Rep. No. 974, 90th Cong., 1st Sess. (1967).

[4] Although the Act states that *"the"* state or local authority may make the request, we do not think this means that there is only one official so authorized. In the absence of regulations, the Secretary must determine in each circumstance whether the request comes from an appropriate authority.

federal assistance.[5] Once the Secretary makes this determination, temporary federal assistance may be provided for a period of 45 days. The legislative sources cited above do not reveal the purpose of the 45-day limitation. Because the purpose of the section is to authorize temporary assistance to states and localities, it may be inferred that the provision was added to prevent prolonged federal involvement. Financial commitments may not be made beyond the 45-day period. If the financial commitments are made within the 45-day period, and if they are intended to provide "temporary" aid, we believe the section allows the benefits of the commitments to extend beyond the 45 days.

Finally, based upon our review of the statute and its legislative history, as discussed above, at least in the circumstances as you have described them in the case, the Public Health Service is authorized to provide temporary relocation assistance. Any removal of families, and their temporary relocation in other housing, will be for purposes closely related to assessing and dealing with the health emergency. Congress intended to confer on the Secretary of Health and Human Services authority broad enough to respond as contemplated here.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] We have been advised by the General Counsel's Office of the Department of Health and Human Services that a standard internal operating procedure requires that the Surgeon General determine that there is indeed a "health emergency." The statute itself does not require this procedure, and the process is not set forth in the Public Health Service's regulations.